[No. 24580–5–I.   Division One.   January 22, 1991.]

*In the Matter of the Marriage of* DIANE M. PEREZ, *Respondent, and* DAVID ENGDAHL, *Appellant.*

*David Engdahl,* pro se.

*Mabry C. DeBuys, Douglass A. North,* and *Maltman, Weber, Reed, North & Ahrens,* for respondent.

COLEMAN, J.—David Engdahl appeals from the trial court's decision to apply the 1988 Child Support Schedule (RCW 26.19) to increase his support payment rather than follow the Uniform Child Support Guidelines specified in the parties' 1986 dissolution decree. He also appeals from the court's decision to hear the case rather than require mediation pursuant to the dissolution agreement and its refusal to consider certain financial information in determining the support award. Finally, Engdahl appeals from the court's refusal to award him attorney fees from Perez's attorneys pursuant to CR 11. Perez cross–appeals from the trial court's revision of the superior court commissioner's award of attorney fees.

David Engdahl and Diane Perez were married in Colorado on October 26, 1980. Shortly thereafter, they moved to Washington where Engdahl had been offered employment at a substantially higher pay. Their only child, Nathan, was born in October 1984. In time, Engdahl and Perez separated and a dissolution decree was entered on December 31, 1986.

Incorporated into the decree was the parties' court–approved property settlement agreement, written pursuant to RCW 26.09.070, which defined the parties' child custody and support obligations. In section 2, entitled "Provision for Children," the decree obligated Engdahl to pay Perez a certain amount each month for child support. This amount was determined "according to the methods, procedures, formulas and schedules contained in the Washington State Association of Superior Court Judges Uniform Child Support Guidelines . . .". The decree further provided that beginning January 1988, an annual adjustment would be made to Engdahl's child support and child care obligations, again "according to the methods, procedures, formulas, and tables contained in the [Guidelines], as now written and hereafter amended." In addition, section 2(K) of the decree included express arrangements for dispute resolution

regarding "any issue, except those reserved to the Wife herein as physical custodian . . .".

In March and April 1989, Engdahl's attorney, J. Porter Kelley, and Perez's attorney, Mabry De Buys, exchanged their clients' 1988 income tax information for determining the annual child support adjustment. Kelley mailed De Buys his calculations of Engdahl's adjusted child support payments, which totaled $689 per month[1]—an increase of $76 per month from the prior year, determined according to the Washington State Association of Superior Court Judges Uniform Child Support Guidelines which were specifically named in the parties' dissolution decree as the method of calculating annual support adjustments. Engdahl consequently paid Perez $380 as additional support for the months of January through May 1989.

In contrast, De Buys calculated Engdahl's adjusted monthly child support payments to be $1,189 per month,[2] determined according to the terms of the 1988 Child Support Schedule (RCW 26.19). De Buys believed that the Guidelines specified in the parties' decree had been amended by the 1988 act and, consequently, that the 1989 child support adjustments would be determined by the provisions of that act.

Engdahl disputed the application of the 1988 act as well as the financial figures De Buys used to calculate the adjusted child support amount. On May 15, 1989, De Buys filed a motion to set child support, including a request for attorney fees and costs for having to bring the motion. The hearing was set for May 23, 1989.

Engdahl, now acting pro se, responded to the motion with assertions that the parties' dissolution decree fully provided for child support determinations and that the 1988 act did not apply retroactively to their decree. He

---

[1]Calculated by adding $476 for child support to $213 for day–care costs.

[2]Calculated by adding $851 for child support to $338 for day–care costs.

further asserted that Perez was bound by subsection 2(K) of the decree to use mediation to resolve any dispute except those concerning issues reserved to Perez in subsection 2(D), which did not include child support.[3] In addition, Engdahl requested attorney fees on the ground that Perez violated their dissolution decree by failing to comply with the mediation provision.

During the hearing for the motion to set child support, Engdahl presented several financial documents, including an itemization of the debts and financial history of the prior marital community. The commissioner refused to consider those documents because they were untimely, despite Engdahl's assertions that he had received no notice that the commissioner would be making findings of fact. As Engdahl explained, the only notice he had received was that the hearing would address matters of law, which he presumed would be whether the 1988 Child Support Schedule governed their dissolution decree and whether mediation was required pursuant to the decree.

The commissioner orally set monthly child support payments to be paid by Engdahl in the amount of $952. He further determined that Engdahl was in arrears in child support and that he owed Perez $1,695 for the first 5 months of 1989.[4] In addition, the commissioner awarded Perez $500 in attorney fees.

Between the time of the oral ruling and the written order on June 7, 1989, Perez supplied the commissioner with

---

[3]Section 2(D) reads as follows:

"*Consultation.* Both parents will continue to consult regarding all major decisions such as the child's health, education, religion and welfare. In the event the parties disagree upon major decisions, the Wife shall have the final and sole right to make such decisions. The day–to–day child–rearing decisions will be made by the Wife."

[4]Engdahl's 1988 child support payments had been $613 per month, and he continued to pay that monthly amount in 1989 until he received the necessary financial information from Perez to calculate the support adjustment. After receiving that information, Engdahl promptly determined the monthly adjustment to be $76, and he paid Perez an additional $380 to cover that monthly increase for the first 5 months of 1989.

different financial information,[5] including evidence that Engdahl had paid $380 toward arrearages before the hearing had occurred. The commissioner's written order ultimately calculated the amount of arrearages to be $1,315.

Engdahl filed a motion to revise the commissioner's decision, attaching the exhibits presented to but not considered by the commissioner. In superior court, the judge granted Perez's motion to strike those exhibits from the record, denied Engdahl's motion for revision, and revised the commissioner's decision to grant Perez attorney fees, finding that "any disagreements regarding the annual adjustments in the child support and child care obligation are subject to mediation under paragraph 2.K of the Decree of Dissolution . . . and no such mediation took place . . .".

## CHILD SUPPORT CALCULATION

We first address the effect of the 1988 Child Support Schedule upon the parties' 1986 dissolution decree. Engdahl asserts that the trial court erred by applying the 1988 act to determine the adjusted child support payments for 1989 and, instead, should have followed the Guidelines specified in the parties' dissolution decree. In contrast, Perez argues that the 1988 act effectively amended the Guidelines and thus its provisions were automatically incorporated into the decree according to the decree's own terms.[6]

---

[5]Perez first changed her initial child care calculations from $470 to $340 per month. She next corrected information that she had presented about Engdahl's income and corresponding support obligations, lowering the latter from $1,095.80 to $1,057. Finally, Perez corrected the financial information she had presented to reflect that Engdahl had paid an additional $380 in support payments for the months of January 1989 through May 1989.

[6]Section 2(G)(3) of the decree states:

"The Husband's child support and child care obligation shall be adjusted annually effective each January beginning in 1988 according to the methods, procedures, formulas, and tables contained in the Washington State Association of Superior Court Judges Uniform Child Support Guidelines, as now written and hereafter amended. . . ."

■ Perez's argument must fail. Only the Washington State Association of Superior Court Judges has the authority to amend the Guidelines because that Association promulgated them. *See* RCW 2.16.040. Consequently, the Legislature could not have amended the Guidelines by enacting the 1988 Child Support Schedule.

■ Further, the 1988 Child Support Schedule did not automatically revise all existing support decrees. The Schedule applies "in all proceedings in which child support is determined or modified". Washington State Child Support Schedule Comm'n, *Washington State Child Support Schedule* Std. 1(c), at 3 (July 1988). Thus, the provisions of the 1988 Act apply when child support decrees are originally entered and when actions are brought to modify existing decrees. *See* RCW 26.09.909.

In this case, both parties expressly agree that their action was not brought to modify their decree—Engdahl characterizes the action as an attempt to clarify and interpret the parties' intent, while Perez asserts that the action is to enforce the decree according to the new method of calculating the support award. The language of the decree clearly cannot support the conclusion that the parties intended such a major revision as replacing the Guidelines with an entirely new support schedule. Because the parties did not seek to modify their decree and because the 1988 Schedule did not "amend" the former Guidelines, the adjustment in monthly child support payments must be calculated according to the Guidelines specified in the parties' decree unless proper grounds exist to modify the decree and modification is sought.

Because the issue is not before us, we do not address whether the enactment of the 1988 Child Support Schedule is a sufficient change in circumstances to qualify as a basis for modification.

Reversed and remanded.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

GROSSE, C.J., and BAKER, J., concur.

Review denied at 116 Wn.2d 1030 (1991).